9 F.3d 109
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PEABODY COAL COMPANY; Old Republic Insurance Companies, Petitioners,
v.
Frank DALRYMPLE; and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 92-4229.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1993.
 
 Before: MILBURN and GUY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Peabody Coal Company and its insurance carrier, Old Republic Insurance Companies (the operator), seek review of the Benefits Review Board's decision affirming the administrative law judge's award of black lung benefits. The ALJ found that the operator had failed to rebut the presumption of total disability due to coal workers' pneumoconiosis contained in 20 C.F.R. Sec. 727.203. On appeal, the operator argues that the ALJ improperly discredited Dr. Prior's testimony. After reviewing the record and considering the parties' arguments, we find that the ALJ erred in not finding the presumption rebutted by the evidence as a whole. We grant the petition for review and reverse the decision of the Board.
 
 I.
 
 2
 A living miner is entitled to a presumption of total disability due to pneumoconiosis if he has been "engaged in coal mine employment for at least 10 years" and meets one of four medical requirements: (1) a chest x-ray or biopsy establishes the existence of pneumoconiosis; (2) ventilatory studies establish a sufficiently severe chronic respiratory or pulmonary disease as demonstrated by values which are specified; (3) blood gas studies demonstrate sufficient impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are specified; or (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. Sec. 727.203(a). Once this presumption has been established, the burden of proof shifts to the employer to rebut the presumption. Section 727.203(b), 20 C.F.R., provides:
 
 
 3
 The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 4
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or
 
 
 5
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or
 
 
 6
 (3) The evidence establishes that the total disability ... of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 7
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 8
 The claimant, Frank Dalrymple, was born on October 26, 1913, and began working in the mines in 1935. From 1935 until 1938, he worked as a hand loader on an irregular basis. His next coal mine employment began in 1943 and ended in 1957. During this time he held various positions, including driller, shooter, and continuous mine operator. He returned to coal mine work in 1969 and continued in various positions until February 1976. During this last period of coal mine employment, Dalrymple worked cleaning belt heads, shoveling loose coal, shooting coal, and finally drilling coal, a position he held for the last five or six years of his employment. All totalled, claimant had over 22 years of coal mine employment.
 
 
 9
 On March 12, 1976, claimant filed his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. His claim initially was allowed on February 26, 1979. The operator controverted the claim and, after additional evidence was considered, the Deputy Commissioner allowed the claim. The operator rejected this determination and requested a hearing. A formal hearing was held on October 29, 1980, after which the ALJ awarded benefits. The operator appealed the ALJ's decision and, in 1988, the Board reversed, finding that the ALJ improperly had weighed the medical evidence relative to rebuttal under section 727.203(b)(2) and that the ALJ's discrediting of the report by Dr. Prior was "not supported by the evidence of record and does not accord with law." (App. 41.) The case was remanded to the ALJ for further consideration in light of a then recent Sixth Circuit opinion, York v. Benefits Review Board, 819 F.2d 134 (6th Cir.1987). On remand, the ALJ again rejected Dr. Prior's testimony. The operator appealed and the Board affirmed, ruling that the ALJ "permissibly rejected Dr. Prior's opinion as it was not supported by his underlying documentation." (App. 6.) The operator now seeks review before this court.
 
 II.
 
 10
 Claimant had two different sets of chest x-rays, taken three years apart. Those x-rays were read four different times by three different doctors, including twice by a certified "B" reader.[1] All concluded the x-rays were negative for pneumoconiosis.
 
 
 11
 Two ventilatory studies also were done, three years apart.
 
 
 12
 A ventilatory study determines a person's ability to move air in and out of their lungs, by measuring two separate criteria: (1) the forced expiratory volume (FEV), which is the maximum amount of air measured in liters that a particular individual can expel from his or her lungs in one second; and (2) the maximum voluntary ventilation (MVV), which is the total volume of air, in liters, that an individual expels over a period of one minute during maximum repetitive respiratory effort.
 
 
 13
 Peabody Coal Co. v. Lowis, 708 F.2d 266, 270 (7th Cir.1983). Dalrymple's ventilatory study done in 1976 resulted in an FEV of 1.94 and a MVV of 85. The test done in 1979 yielded an FEV of 1.92 and an MVV of 66. For a man of his height, both tests are qualifying under 20 C.F.R. Sec. 727.203(a)(2);[2] however, only the test performed in 1976 has tracings attached and is the only one that meets the quality standards in the regulations. 20 C.F.R. Sec. 410.430. Therefore, based on the 1976 ventilatory study, Dalrymple is entitled to the presumption of total disability due to pneumoconiosis.
 
 
 14
 One blood gas study also was performed in 1979. A blood gas study measures the lung's ability to transfer oxygen from the lung's alveoli to the blood.
 
 
 15
 In a blood gas study, an arterial blood sample is tested for oxygen pressure (PO2 ) and carbon dioxide pressure (PCO2 ) measured in millimeters of mercury (mm Hg). A reading lower than the normal PO2 of 97mm Hg and/or higher than the normal PCO2 of 40mm Hg indicates an impaired ability to absorb oxygen into and/or expel carbon dioxide from the blood.
 
 
 16
 Lowis, 708 F.2d at 271. Dalrymple's blood gas study yielded a PO2 of 83 and a PCO2 of 42. The comments on this blood gas study stated "normal blood oxygenation." In his 1981 decision, the ALJ found that these values are "above the table values of Sec. 727.203(a)(3) and do not entitle the Claimant to a presumption of totally disabling pneumoconiosis." (App. 30.) However, on remand, the ALJ stated that this "single blood gas study revealed qualifying values under Sec. 727.203(a)(3) of the Regulations." (App. 15.) Under subsection (a)(3), values are qualifying if they are "equal to or less than the values specified in the following table:"
 
 
 
 Arterial pO sub2 Arterial pCO sub2 equal to
 or less than (mm. Hg.)
 
 
 [30]
 or below 70
 
 
 [31]
 69
 
 
 [32]
 68
 
 
 [33]
 67
 
 
 [34]
 66
 
 
 [35]
 65
 
 
 [36]
 64
 
 
 [37]
 63
 
 
 [38]
 62
 
 
 [39]
 61
 4045 60.
 Above 45 Any Value
 
 
 [20]
 C.F.R. Sec. 727.203(a)(3) (emphasis added)
 The operator contends on appeal that the blood gas study is not qualifying and that the ALJ erred on remand in concluding that it was. Claimant does not address this issue in his brief before this court. We find the table contained in the regulation to be confusing, at best. However, we are aided in our interpretation of it by the benchmark of a normal reading: PO2 of 97 and a PCO2 of 40; and by the values in the Lowis case that were found to be non-qualifying: PO2 of 66 and PCO2 of 43. We conclude that Dalrymple's blood gas study does not trigger the presumption under 20 C.F.R. Sec. 727.203(a)(3). To conclude otherwise would lead to a reading of the table that would make normal values qualifying, which cannot be the case.
 Claimant also was examined by two physicians, Dr. Wehr and Dr. Prior. Both submitted written opinions, and Dr. Prior testified by deposition admitted at the hearing as an exhibit. Dr. Wehr conducted a physical examination, obtained chest x-rays, a pulmonary function study, and the miner's medical and occupational histories. Dr. Wehr diagnosed chronic obstructive pulmonary disease related to coal mine employment, but concluded that the miner was not totally disabled due to his pulmonary condition. The ALJ rejected Dr. Wehr's conclusion for rebuttal purposes because the pulmonary function studies he obtained qualified for the presumption and the physical examination he performed was brief. On the first appeal, the Board found that the ALJ had acted "within the purview of his authority in discrediting" Dr. Wehr's conclusion. The operator does not argue with this conclusion in its appeal.
 Dr. Prior also examined Dalrymple. Dr. Prior is a board-certified pulmonary disease specialist and professor of medicine at Ohio State University. He is the author of a physical diagnosis textbook which is widely used in medical schools throughout the country. In addition to obtaining a medical and occupational history, Dr. Prior conducted a thorough physical examination, obtained chest x-rays, an electrocardiogram, a blood count, and the blood gas study and pulmonary function studies discussed above. Dr. Prior concluded that the miner did not have pneumoconiosis and was not totally disabled due to pulmonary or respiratory impairment. Dr. Prior found that all the tests were normal, except for a minimal obstructive impairment shown in the ventilatory studies which Dr. Prior attributed to Dalrymple's 20 years of smoking. The final paragraph of his report reads:
 Mr. Dalrymple appears as a healthy individual who showed no evidence of shortness of breath when moving about the examining room or in the hallway. Examination was entirely normal throughout, no abnormalities could be found in the lungs. His chest x-rays show no evidence of coal workers pneumoconiosis, which would be manifested by the development of scattered nodular lesions in the lungs and sometimes by linear interstitial fibrosis. Neither of these changes were observed on the claimant[']s films. Pulmonary function studies were relatively good for a man of his age with a smoking history of approximately 25 pack/years, although he has not smoked for 20 or more years. However, the minimal changes that are present would not be incapacitating from the performance of his usual work. In conclusion, I find no evidence of coal workers pneumoconiosis, and further, it is my opinion that he is not disabled from the performance of gainful work.
 (App. 79-80.) No other medical evidence to support rebuttal was offered and no evidence was offered to challenge or contradict the conclusions of Drs. Wehr and Prior.
 III.
 It is not disputed that the ventilatory studies done in 1976 entitled claimant to the presumption of total disability due to pneumoconiosis. What is disputed is whether the operator rebutted that presumption under 20 C.F.R. Sec. 727.203(b)(2) which provides for rebuttal when the evidence establishes that the claimant "is able to do his usual coal mine work or comparable and gainful work."[3] In determining whether the interim presumption has been rebutted, the ALJ must consider all relevant evidence. York, 819 F.2d at 136. The operator must establish rebuttal by a preponderance of the evidence. See id. at 138-39; Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1120-21 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985).
 In reviewing the ALJ's findings, this court may not set aside findings of fact if they are based upon substantial evidence viewing the record as a whole, "even if this court would have taken a different view of the evidence were it the trier of fact." Neace v. Director, OWCP, 867 F.2d 264, 267 (6th Cir.1989). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Moore v. Califano, 633 F.2d 727, 730 (6th Cir.1980) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).
 Dr. Prior's conclusion that Dalrymple was "not disabled from the performance of gainful work" (app. 80) and his testimony that the minimal obstructive impairment would not prevent the claimant from engaging in his regular coal mine employment (app. 90) is uncontradicted in the record. Unless it was proper to discredit his conclusions, the operator has rebutted the presumption. The issue we must consider is whether the ALJ's rejection of the operator's "rebuttal evidence was supported by substantial evidence and in accordance with law." Lowis, 708 F.2d at 273.
 The ALJ initially discredited Dr. Prior's testimony finding it "not sufficiently supported by objective criteria to overcome the presumption." (App. 34). The two reasons given for discrediting Dr. Prior's testimony were the physical exertion tests Dr. Prior performed, consisting of asking the claimant to bend over and tie his shoe and walk 50 feet, seemed to have little value, and Dr. Prior did not state that he was aware of the physical requirements of the claimant's most recent job as a driller. In addressing rebuttal under subsection (b)(3), the ALJ also discredited Dr. Prior's testimony because the ALJ held that Dr. Prior testified that "where there is negative x-ray evidence, symptoms of disability are due to some cardio-pulmonary disease other than exposure to coal mine dust." (App. 35.) The ALJ found this opinion to be contrary to the Act because the Act allows miners to receive benefits regardless of whether or not x-ray evidence is positive.
 The Board reversed and remanded finding that the ALJ "improperly weighed the medical evidence of record."
 The administrative law judge's determination that Dr. Prior's opinion lacked credibility because Dr. Prior's testing was an inaccurate evaluation of claimant's ability to perform his usual coal mine work and because Dr. Prior was unaware of the physical requirements of claimant's employment as a coal driller, is not supported by the evidence of record and does not accord with law. The administrative law judge engaged in a selective analysis of Dr. Prior's report, failing to give consideration to the report as a whole. See Wright v. Director, OWCP, 7 BLR 1-475 (1984). Additionally, the administrative law judge incorrectly concluded that Dr. Prior was unaware of the physical requirements of claimant's employment as a coal driller. Dr. Prior's deposition testimony is to the contrary and the administrative law judge failed to address the physician's testimony in reaching his conclusion. See Employer's Exhibit 2. Thus, the administrative law judge's findings relative to Dr. Prior's medical report must be vacated.
 (App. 41.)
 On remand, the ALJ again discredited Dr. Prior's testimony on substantially the same basis as he had originally: Dr. Prior's opinions on the presence of a negative x-ray are contrary to the Act; Dr. Prior's interpretation of ventilatory studies as normal when they yielded qualifying values under 20 C.F.R. Sec. 727.203(a)(2) (but did not meet the quality standards because the tracings were not attached) are also contrary to the Act; and "nowhere in the record does Dr. Prior demonstrate that he was aware of these specific physical requirements of Claimant's former coal mine employment." (App. 17.) Additionally, the ALJ again referenced the physical tasks Dr. Prior asked claimant to perform. This time, however, the ALJ recognized that an ALJ may not substitute his opinion for that of a doctor in evaluating a medical report. Carpeta v. Mathies Coal Co., 7 BLR 1-145, 147 (1984). Instead, the ALJ claimed that this went to the question of whether the medical report was reasoned, an issue which is in the purview of the finder of fact. Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir.1983).
 While we fail to see how the ALJ's reasons for discrediting Dr. Prior's testimony the second time around differ in any substantial way from the first time, the Board found that the second time around the ALJ's opinion was permissible. The Board stated that Dr. Prior's opinion "was not supported by his underlying documentation." (App. 6.)
 We find that the ALJ's rejection of Dr. Prior's testimony and the Board's affirmance of that decision were not supported by substantial evidence. The mere fact that one of the tests which Dr. Prior obtained yielded qualifying values does not invalidate his conclusion based on all the tests that were performed. Medical opinions of no compensable disability may be based, in part, on qualifying pulmonary function studies.
 The Board has long recognized that a medical opinion concerning the existence or severity of a respiratory or pulmonary impairment based on clinical data, whether qualifying or non-qualifying, may be sufficient to establish that a claimant can perform his usual coal mine work for purposes of subsection (b)(2) rebuttal. Underlying these holdings is the well-recognized principle that the evaluation of disability as evidenced by such clinical data is a medical determination. Consequently, it would be error to permit the trier-of-fact to weigh the results of clinical tests against a physician's opinion since we would be allowing the administrative law judge to substitute his opinion of what clinical tests show for that of a physician who has based his opinion on uncontested, valid documentation. Accordingly, we hold that the trier-of-fact cannot weigh clinical tests against [a] physician's opinions in determining whether the presumption has been rebutted pursuant to subsection (b)(2).
 Carpeta, 7 BLR at 1-146-47 (citations omitted) (footnote omitted). Dr. Prior's opinion was based on not only the one ventilatory study that, while not meeting the quality standards, yielded qualifying data, but also on non-qualifying x-rays, non-qualifying blood gas studies, and a thorough physical exam. Additionally, while pulmonary function studies, x-rays, and blood gas studies are all considered to be objective tests, see Neace, 867 F.2d at 266, the pulmonary function studies are effort-dependent, relying on the cooperation of the claimant, whereas the x-rays and blood gas studies do not. Therefore, the x-rays and blood gas studies in this case are deserving of somewhat more credence than the pulmonary function studies. Rowlett v. Director, OWCP, 1 BLR 1-451, 1-454 (1978).
 While the ALJ pointed to testimony showing that Dr. Prior held different standards than the regulations for what constituted a finding of impaired functioning, this does not amount to showing that a physician adheres to a philosophy in conflict with the regulations. "The Board has held that '[a] physician's belief that simple pneumoconiosis is never disabling may constitute grounds for rejecting his medical opinion as inconsistent with congressional intent and the spirit of the Act.' " Adams v. Peabody Coal Co., 816 F.2d 1116, 1119 (6th Cir.1987) (citation omitted). The ALJ incorrectly concluded that Dr. Prior's opinions were contrary to the spirit of the Act.
 The Eleventh Circuit has extended the "contrary to the Act" doctrine to a context much closer to a different aspect of the present case. In Black Diamond Coal Mining Co. v. Benefits Review Board, 758 F.2d 1532 (11th Cir.1985), the court held that the Board could discount the testimony of a doctor as inconsistent with the Act when that doctor stated "he would not diagnose pneumoconiosis absent positive x-ray evidence that the disease existed." Id. at 1534. The ALJ pointed to Dr. Prior's testimony quoting an article by Dr. William Roemmich as proof that Dr. Prior himself would not diagnose pneumoconiosis absent positive x-ray evidence: "The consensus is that pneumoconiosis in the living miner can be diagnosed only by radiologic changes except in infrequent cases where biopsy evidence is available. Some miners with negative chest x-rays are disabled, but we believe that such disability results from other cardial respiratory disease." (App. 93.) However, the ALJ failed to recognize that Dr. Prior's own testimony was not so absolute: "In general, if we do not find evidence of coal workers' pneumoconiosis on x-rays, the symptoms that are present are the result of some other cardial respiratory disease...." (App. 93) (emphasis added). The Supreme Court has recognized that "[b]ased on current medical knowledge, X-ray, biopsy, and autopsy evidence are today the only reliable evidence for diagnosing pneumoconiosis." Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 150-51 n. 26 (1987).
 Additionally, Dr. Prior's testimony was discredited for subsection (b)(2) purposes where the focus is on the extent, if any, of the miner's disability, not on whether pneumoconiosis is present. The presence or absence of pneumoconiosis is the subject of (b)(4) rebuttal. "[E]ven a doctor's belief that simple pneumoconiosis cannot be totally disabling does not automatically exclude consideration of a physician's otherwise probative testimony concerning the existence or severity of disability suffered by a black lung claimant." Adams, 816 F.2d at 1119. Dr. Prior described his approach to evaluating pulmonary function: "[I] don't think that you can make an evaluation just on one or two tests. I think that you have to make a total appraisal of an individual as you see him, as you work with him, as you get laboratory studies, to make the most valid determination that you can as to whether that person has impaired pulmonary function or not." (App. 95.) Even if Dr. Prior's testimony concerning diagnosing the presence of pneumoconiosis had been contrary to the Act, his testimony concerning the extent of impairment should not have been automatically discredited.
 The ALJ also stated there was no evidence in the record that Dr. Prior was aware of the specific physical requirements of Dalrymple's former coal mine employment. We agree with the Board on this point. The evidence in the record and the testimony of Dr. Prior indicate that he was aware of the physical requirements of the claimant's coal mine employment.
 Claimant had one test performed in 1976 which gave rise to the rebuttable presumption of total disability. Every other test that met the quality standards of the Act did not indicate any significant impairment. Every medical opinion submitted in this case concluded that the claimant was not disabled and that he was able to do his usual coal mine work. "[T]he factfinder should also consider any contrary test results or diagnosis in reaching a decision as to whether a statutory presumption applies and ultimately whether the claimant is totally disabled." Rowe, 710 F.2d at 255. The ALJ's discrediting of each piece of rebuttal evidence and refusal to examine the evidence as a whole, in this case, was error. We find the ALJ's discounting of Dr. Prior's testimony is not supported by substantial evidence. The operator met its rebuttal burden, and therefore we grant the petition for review.
 We REVERSE the Board's affirmance of the ALJ's opinion awarding benefits.
 
 
 [1]
 " 'B' readers are radiologists who have demonstrated their proficiency in assessing and classifying x-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health and Human Services." Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 146 n. 16 (1987) (citation omitted). Greater weight is given to diagnosis by a "B" reader. Woodward v. Director, OWCP, 991 F.2d 314, 316 n. 4 (6th Cir.1993)
 
 
 [2]
 This subsection reads as follows:
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in Sec. 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table:
 Equal to or less than--
 FEV MVV
 67" or less 2.3 92
 68" 2.4 96
 69" 2.4 96
 70" 2.5 100
 71" 2.6 104
 72" 2.6 104
 73" or more 2.7 108
 Dalrymple's height was recorded as 62" in 1976 and 63" in 1979.
 
 
 [3]
 The operator originally also argued for rebuttal under subsections (b)(3) and (4), but has not challenged the Board's decision on those issues in this appeal